# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| BARBARA S. RICHARDS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO.: 1:17-CV-37-TLS |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

The Plaintiff, Barbara S. Richards, seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her applications for disability and disability insurance benefits as well as supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied her applications and erred by improperly placing undue weight on her ability to engage in daily activities and by considering the fact that her alleged onset date is only one day after the Commissioner denied her previous applications for benefits.

## BACKGROUND

**A.     Procedural Background**

On April 1, 2013, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, alleging disability beginning on October 15, 2011. (R. 13.) Her claim was denied initially and upon reconsideration. (*Id.*) On March 6, 2015, the Plaintiff appeared with counsel

and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Marie Kieffer, a vocational expert, and the Plaintiff's boyfriend, Fred Folden, also appeared and testified at the hearing. (*Id.*) On May 29, 2015, the ALJ denied the Plaintiff's applications, finding she was not disabled from her alleged onset date, October 15, 2011, until the date she was last insured, September 30, 2014. (R. 13–33.) On December 2, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

Previously, the Plaintiff filed applications for disability insurance benefits and supplemental security income on July 13, 2010. (R. 13.) Her claims were denied initially on September 21, 2010, upon reconsideration on November 29, 2010, and after a hearing by an ALJ on October 14, 2011. (*Id.*) The Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (*Id.*) Although the Plaintiff's Title II claim was not too old to reopen, the ALJ in the instant case found that there was no evidence that clearly showed that the previous decision was in error and that there was no new and material evidence to justify reopening the previous decision.

On January 31, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

**THE ALJ'S FINDINGS**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate

that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since her alleged disability onset date, October 15, 2011. (R. 16.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including lumbar degenerative disc disease/spondylosis/radiculitis, cervical degenerative disc disease/spondylosis, thoracic spine scoliosis, migraines/headaches, degenerative changes in the right shoulder, obesity, mild bilateral median neuropathy/carpal tunnel syndrome, major depressive disorder, and PTSD/generalized anxiety disorder. (R. 16.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work and had lasted for at least twelve months as required under the statute. (*Id.*) However, though the ALJ noted that the Plaintiff also alleged that she broke her right ankle in 2011 and that she often had to take antibiotics for recurrent boils, the ALJ nevertheless found that the injury was not severely limiting for twelve months. (*Id.*) The ALJ also found that the recurring boils did not significantly limit her ability to perform basic work-related activities or had impeded the Plaintiff's abilty for a period of twelve months. (R. 17.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ."

3

§ 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), finding that the Plaintiff could sit for a total of six hours and stand/walk for a total of two hours in an eight-hour period except:

> [S]he is able to lift, carry, push, and pull 10 pounds. She is only occasionally able to push and pull. She is occasionally able to operate foot controls. She can maintain a posture for 30 minutes and then must alternate positions (but she can remain at the workstation and stay on task). In addition, the claimant can occasionally bend and stoop in addition to what is required to sit. She is not able to climb ladders, ropes, or scaffolds and she can only occasionally climb ramps and stairs, balance, crouch, crawl, and kneel. She can frequently but not constantly engage in fine manipulation (fingering, feeling, gripping, and turning) of small objects and frequently but not constantly engage in gross manipulation (handling, grasping, and turning) large objects. It is best that she avoid concentrated exposure to extreme cold, extreme heat, humidity, and vibrations. She also should avoid work within close proximity to dangerous moving machinery, unprotected heights, and slippery/uneven surfaces. The claimant can perform simple, routine, repetitive work activity that can be learned with a short demonstration period of up to 30 days. She can maintain the concentration required to perform simple tasks and she can remember simple work-like procedures. She can tolerate a flexible, goal-oriented pace. She is limited from fast-paced work activity such as assembly line production work with rigid or strict productivity requirements. She is best suited to working in an environment with only superficial interactions with co-workers, supervisors, and the public, with superficial defined as occasional casual contact with no prolonged conversation (but contact with supervisors still involves necessary instruction).

(R. 19.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled from her alleged onset date to her date last insured. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but "only in so far as they are consistent with the above noted residual functional capacity." (R. 20.) In so finding, the ALJ determined that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not fully supported and credible and fail to support a more restrictive assessment of [her] [RFC]." (R. 21.) The ALJ similarly did not find the Plaintiff's mother's or the Plaintiff's current and former boyfriends' testimony credible. (R. 21.)

The Plaintiff had "past relevant work as a housekeeper (unskilled, medium work), home health aide (semi-skilled work that is performed at the medium exertional level in the national economy but at the light exertional level by the claimant), newspaper deliverer (semi-skilled, medium work, cashier/checker (semi-skilled, light work), waitress (semi-skilled, light work), and tank inspector (unskilled, heavy work)." (R. 31.) Thus, based on the Plaintiff's RFC, the ALJ concluded that the Plaintiff was not capable of performing any past relevant work. (*Id.*) However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. 32.) Ultimately, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act since her alleged onset date and was not entitled to supplemental security income. (R. 33.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address

every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ placed undue weight on her ability to engage in daily living activities and by reaching an adverse credibility determination based on the fact that her alleged onset date was the day after the Commissioner denied her previous applications for benefits. Although not clear from the briefing, it appears that the Plaintiff seems to dispute the ALJ's discussion of her daily living activities both as to step three (severity of condition) and step four (RFC determination).

Turning first to the analysis of the Plaintiff's ability to engage in living activities during step three, the Court discerns no error. In order to determine if a mental impairment meets or medically equals the severity of one of the listed impairments under 20 C.F.R. § 404, Subpart P, an ALJ must take into consideration a claimant's daily activities. Specifically, under section 12.06 of the listings, an ALJ must determine if there are marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation of extended duration. In this context, marked means more than moderate but less than extreme. Here, the ALJ looked at the evidence of record, including testimony from the Plaintiff, the Plaintiff's mother,

and the Plaintiff's current and former boyfriends, and determined that any difficulties the Plaintiff had in performing daily living activities that could have resulted from her mental impairments were not marked difficulties. Rather, the ALJ found that the Plaintiff's mental impairments caused only "mild limitation in her ability to perform activities of daily living and moderate limitation in her ability to maintain social functioning and to sustain concentration, persistence, or pace." (R. 17.) For example, the record indicates that the Plaintiff was able to take her medications without reminders, go out alone, handle bank accounts, and visit with friends. The Court will not reweigh that evidence and substitute its judgment for that of the ALJ.

The Court now turns to the ALJ's consideration of the Plaintiff's ability to engage in daily living activities in evaluating the Plaintiff's RFC. An individual's daily activities are among the factors that an ALJ must consider in making such a determination. *See Craft*, 539 F.3d at 660; *Similia v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). However, the Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). In the instant case, the ALJ referenced the Plaintiff's ability to engage in daily living activities in evaluating the credibility of her testimony regarding the severity of her limitations stemming from her mental impairments.

"An ALJ is in the best position to determine the credibility of witnesses," and a credibility determination will be overturned "only if it is patently wrong." *Craft*, 539 F.3d at 678; *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his

credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.") The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *see also Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. "[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Similia*, 573 F.3d at 517 (citing 20 C.R.F. § 404.1529(c)(2)–(4) and *Prochaska*, 454 F.3d at 738). A credibility determination does not need to be flawless. *Id.* "[A] credibility determination will stand as long as there was some support in the record even if some of the ALJ's credibility determinations were a bit harsh." *Whetzel v. Astrue*, No. 1:07-CV-210, 2009 WL 537640, at *2 (N.D. Ind. Mar. 4, 2009) (citing *Berger*, 516 F.3d at 546).

The Court finds that the ALJ did not rely solely upon the Plaintiff's daily activities in coming to the conclusion that her impairments were not as limiting as she claimed. The ALJ also looked to the Plaintiff's work history, her compliance with treatment regimens, objective medical evidence, and inconsistencies between the Plaintiff's testimony and previous statements she made to treating or evaluating medical professionals. For example, after the alleged onset date, the Plaintiff provided childcare, even putting up flyers to get more business, and she taught others to crochet. (R. 22.) This undermines the Plaintiff's claims that her mental impairments severely limit her ability to socially interact with others. The ALJ also noted that during the relevant time-period, the Plaintiff "indicated to one government entity that she may be capable of

9

work while, at the same time, she indicated to the Social Security Administration that she was disabled." (R. 21.)

The ALJ appropriately cited inconsistencies between the limitations the Plaintiff described in her testimony and the symptoms she described to medical evaluators. *Elder*, 529 F.3d at 414 ("It was well within the ALJ's authority to disregard [the plaintiff's] testimony because it conflicted with what she told [her doctor]."). Treatment records relating to her mental health indicate that she reported difficulties due to situation stressors, such as financial hardships due to issues finding consistent children to babysit and that her boyfriend left her, rather than difficulties stemming from a mental impairment. (R. 22–23.) In July 2013, she reported to an examining psychologist that she felt "sad and depressed only sometimes." (R. 23.) Per the notes of an examining physician at the Centers for Pain Relief, also in July 2013, she denied any history of anxiety or depression. (R. 28.) In May of 2014, she complained of pain in her right shoulder only for a period of several weeks, as opposed to extending back to her alleged onset date in 2011. (R. 27.) She also denied having headaches during a June 2014, evaluation. (R. 27.)

The ALJ considered the record as a whole and weighed the relevant evidence, and the Court does not find that the ALJ's credibility determination was patently wrong. Thus, the Court will not "substitute its judgment for that of the ALJ's by reconsidering facts, reweighing evidence, and deciding questions of credibility." *Whetzel*, 2009 WL 537640, at *3.

The Plaintiff also asserts that the ALJ improperly relied upon the fact that her alleged onset date was only a day after she was previously denied disability benefits. The ALJ stated only that the Plaintiff's new alleged onset date "does not now enhance credibility with respect to being currently disabled, especially in the absence of persuasive evidence that the claimant's conditions suddenly medically deteriorated." (R. 21.) This cursory statement was followed by

over nine full pages of analysis of the other evidence of record, and it cannot be said that this evidence was critical to the ALJ's determination. Even if the Court were to find that a previous denial of benefits is per se an impermissible consideration in a credibility determination, there is still more than enough evidence of record that supports the ALJ's conclusion. *See Similia*, 573 F.3d at 517 (finding that "[t]hough the ALJ's credibility determination was not flawless, it was far from patently wrong"). The ALJ properly considered all evidence of record, and the Court cannot say that the ALJ placed undue weight on the Plaintiff's ability to engage in daily living activities.

According, the Court AFFIRMS the finding of the Commissioner that the Plaintiff was not disabled from her alleged onset date to her date last insured and DISMISSES this case.

SO ORDERED on November 13, 2017.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT